HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
8                                      AT SEATTLE

ORGANO GOLD INT'L, INC.,
9
            Plaintiff,
10
                                                    CASE NO. C16-487RAJ
      v.
11                                                  ORDER
LUIS VENTURA, et al.,
12
            Defendants.
13

14                                   **I.  INTRODUCTION**

15            This matter comes before the Court on Plaintiff Organo Gold Int'l, Inc.'s

16   ("Organo") Motion for Temporary Restraining Order ("TRO") and for a Preliminary

17   Injunction.  Dkt. # 10.  Defendant L&A Ventura Management, Inc. ("L&A Ventura") has

18   filed an Opposition.[1]  Dkt. # 15.  The Court heard oral argument on April 27, 2016.  For

19   the reasons set forth below, the Court **GRANTS** Organo's Motion.

20

21

22

23   ────────────────────────────
     [1] According to the Opposition, Defendants Luis Ventura and Luz Angela Ventura have not yet
     been served.  *See* Dkt. # 15 at 2 n.1.  This Court's Local Rules require that moving parties "serve
24   all moving papers on the opposing party before or contemporaneously with the filing of the
     motion and include a certificate of service with the motion."  Local Rules W.D. Wash. LCR
25   65(b)(1).  The certificate of service accompanying Plaintiff's Motion does not provide much
     detail as to whether Mr. and Mrs. Ventura have been properly served.  Still, it is clear that Mr.
26   Ventura has notice of the Motion and suit.  *See* Dkt. # 2 (Ventura Decl.).  However, since the
     Venturas have since divorced, it is not clear that Mrs. Ventura has been served.  *See id.* ¶ 3.  As a
27   result, the Court will not impose a TRO on Mrs. Ventura until Organo can show that she has
     received adequate notice of this Motion.
28   ORDER – 1

## II.  BACKGROUND

Organo is a multi-level marketing ("MLM") company that distributes ganoderma-based coffee products[2] with operations in the United States, Mexico, and more than 30 other countries.  *See* Dkt. # 1-2 ("Compl.") ¶¶ 1, 8; Dkt. # 11 Ex. 8 (Perrett Decl.) ¶ 5. Defendants Luis Ventura and Luz Angela Ventura are husband and wife and reside in Texas.  *Id.* ¶ 2.  They are also the sole shareholders of L&A Ventura.  *Id.* ¶ 3.  Mr. Ventura joined Organo in July 2009 after having previously worked in the MLM industry.  *See* Dkt. # 16 (Ventura Decl.) ¶¶ 2-4.  He apparently was solicited by another Organo distributor, John Sachtouras.  *See id.* ¶¶ 4-5.  Mr. Ventura remained an independent contractor throughout his tenure with Organo.  *Id.* ¶ 9.  Eventually, the Defendants reached the rank of "Crown Diamond" – the second highest qualification rank within Organo's compensation plan.  *See id.* ¶ 16.

Roughly four years into his tenure at Organo, Mr. and Mrs. Ventura signed an "Independent Distributor Application" with Organo on February 24, 2013.[3]  *See* Dkt. # 11 (Bulthuis Decl.) Ex. 1; Dkt. # 16 (Ventura Decl.) ¶ 8.  The terms and conditions of the application included a clause stating:

> 15. [The applicants] shall not, while participating as an Organo Gold Distributor, or for 12 months after [their] termination, cancellation, or other separation from the Organo Gold program, participate in any other opportunity that directly competes with Organo Gold in offering ganoderma-based products."
>
> *Id.* at 6.

Those terms and conditions also included a provision stating that the applicants agreed to "abide by the Organo Gold Code of Conduct as detailed in the Organo Gold

---

[2] As best as this Court can tell, ganoderma (which is a mushroom of some sort) based products are of particular importance to Organo's business and to the non-compete clauses at issue.  *See* Compl. ¶ 6; Dkt. # 11 Ex. 1 at 6, Ex. 9 (Zelaya Decl.) Ex. C at 89.

[3] All Parties appear to agree that Washington law applies to this case.  Both the Distributor Application and the Policies and Procedures are governed by Washington law.  *See* Dkt. # 11 (Bulthuis Decl.) Ex. 1 at 6; Dkt. # 11 (Zelaya Decl.) Ex. C at 91.

ORDER – 2

Policies and Procedures." *Id.*  The Policies and Procedures also include a non-compete clause.  That provision states:

### X. Non Competition Agreement

> Any Distributor that is terminated and/or cancels his or her Distributor Status, shall not compete with the Company or any of its affiliates by soliciting existing customers of the Company to any ganoderma or healthy beverage business similar to the Company in a multi level marketing setting or its equivalent, for a period of twelve (12) months.

Dkt. # 11 (Zelaya Decl.) Ex. C at 89.

The Policies and Procedures also prohibit distributors from engaging "in deceptive, unlawful, or unethical business or recruiting practices (including cross sponsoring or recruiting)".  *Id.* at 70.  No party seriously disputes that "cross sponsoring" or "raiding" includes the practices of recruiting or attempting to recruit a representative from another distributor's "downline"[4] or trying to do the same to a representative from one's own "downline."  *See* Compl. ¶ 21.

The Distributor Application and the Policies and Procedures also have alternative dispute resolution provisions.  Specifically, the Distributor Application provides that

> In the event of a dispute between an Independent Distributor and Organo Gold arising from or relating to the Agreement, or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through nonbinding mediation as more fully described in the Policies and Procedures.

Dkt. # 11 (Bulthuis Decl.) Ex. 1 at 6.

Oddly, the Policies and Procedures do not actually specify any nonbinding mediation process.  Nevertheless, they do set forth a binding arbitration procedure.  *See* Dkt. # 11 (Zelaya Decl.) Ex. C at 91.  Notably, the arbitration procedure does not "prevent [Organo] from applying to and obtaining from any court having jurisdiction, a writ of attachment, an injunction, or other relief available to safeguard and protect [its] interest prior to, during, or following the filing of any arbitration."  *Id.*

---

[4] A distributor's "downline" is defined as "[t]jhe organization of a Distributor, including those who are directly or indirectly sponsored by the Distributor and continuing down the lines of sponsorship through infinite levels and legs."  Dkt. # 11 (Zelaya Decl.) Ex. C at 71.

ORDER – 3

Ultimately, Mr. Ventura was terminated as an Organo Distributor on February 19, 2016. *See* Dkt. # 11 (Zelaya Decl.) ¶ 6; Dkt. # 16 (Ventura Decl.) ¶¶ 17-18, 20. At that time, Organo held its Project 50K event in Las Vegas, Nevada, a training event held exclusively for the benefit of Organo's distributors. *See* Dkt. # 11 (Perrett Decl.) ¶ 7.

Mr. Ventura associated with another company, Total Life Changes, LLC ("TLC"), in February 2016.[5] *See* Dkt. # 16 (Ventura Decl.) ¶ 22. TLC is another MLM company. *Id.* TLC sells a range of products, such as teas, oils, cleansing products, and weight loss products. *Id.* It also sells coffee infused with ganoderma. *See* Dkt. # 11 (Perrett Decl.) ¶ 9; Dkt. # 16 (Ventura Decl.) ¶ 22; Dkt. # 17 (Licari Decl.) ¶ 2 (5.7% of TLC's total sales attributable to ganoderma-infused coffee). Mr. Ventura was indisputably in Las Vegas at the time of the Project 50K event and indisputably discussed TLC with other Organo distributors. *See* Dkt. # 16 (Ventura Decl.) ¶ 21 ("I responded that I might join another MLM company *or specifically identified TLC*") (emphasis added).[6]

In February 2016, Organo received reports from its distributors that Mr. Ventura had approached them and attempted to recruit them to join TLC. *See* Dkt. # 11 (Zelaya Decl.) ¶ 8; Dkt. # 11 (Sachtouras Decl.) ¶ 5.[7] Indeed, Organo presents evidence that Mr.

---

[5] The Parties disagree as to whether Mr. Ventura associated with TLC prior to his termination or immediately after his termination.

[6] No party addresses the provision, but the Policies and Procedures prohibit former distributors "from promoting another company's business, during [Organo]-related or sponsored activities or any activity promoted as such." Dkt. # 11 (Zelaya Decl.) Ex. C at 89.

[7] Although L&A Ventura objects to this evidence, the fact that Organo's distributors have approached Organo's employees regarding solicitation is not hearsay. First, the statements are not necessarily being offered to show Mr. Ventura actually solicited these individual distributors. Second, Mr. Ventura's statements to the distributors are, of course, not hearsay when offered against him. *See* Fed. R. Evid. 801(d)(2).

Even if inadmissible, the Court may consider inadmissible evidence in ruling on a preliminary injunction. "Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)). Here, many of the individuals complaining of Mr. Ventura's solicitation could easily present testimony regarding Mr. Ventura's statements, disarming most of L&A Ventura's objections.

ORDER – 4

Ventura invited other Organo distributors to hear him present a new opportunity on February 19, 2016.  *See* Dkt. # 11 (Sachtouras Decl.) ¶ 4, Ex. A; Dkt. # 20 (Herrera Decl.) ¶ 5.  Indeed, Mr. Ventura directly approached Mr. Herrera  and indicated that he was considering leaving Organo for TLC.  Dkt. # 20 (Herrera Decl.) ¶ 4.

### III.   LEGAL STANDARD

The standard for a TRO is essentially the same as that for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  In order to obtain preliminary relief, a party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  "In addition, a 'preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor,' provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest."  *Andrews v. Countrywide Bank, NA*, 95 F. Supp. 3d 1298, 1300 (W.D. Wash. 2015) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)).

### IV.   DISCUSSION

Organo pleads several causes of action against the Defendants, but the only ones particularly pertinent to the instant Motion are those for breach of contract and for tortious interference because they form the basis for Organo's request for injunctive relief.  *See* Compl. ¶¶ 42-56.

a.   Likelihood of Success on the Merits for Breach of Contract Claims

Organo argues that they are likely to succeed on their claim that Defendants breached the non-compete clauses in the Distributor Agreement and the P&Ps.  *See* Dkt.

ORDER – 5

# 10 at 10-12. A breach of contract claim in Washington requires "proof of four elements: duty, breach, causation, and damages." *BP W. Coast Prods. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1121 (W.D. Wash. 2013) (citing *Baldwin v. Silver*, 269 P.3d 284, 289 (Wash. Ct. App. 2011)).

The Parties do not seriously dispute most of these elements. Instead, the Parties focus their arguments on whether the non-compete provisions are enforceable. L&A Ventura argues that Organo's breach of contract claim necessarily fails because Organo failed to engage in pre-dispute mediation, the non-compete clauses are unenforceable for lack of consideration, and the non-compete clauses are unreasonable under Washington law. *See* Dkt. # 15 at 9-14.

> ### i.   *Whether Mediation is a Condition Precedent to Litigation*

L&A Ventura argues that the Action should be dismissed because Organo has not yet engaged in nonbinding mediation prior to engaging in litigation. *See* Dkt. # 15 at 9.

The alternative dispute resolution provisions of the Distributor Application and Policies and Procedures provide for mandatory pre-litigation mediation. *See* Dkt. # 11 (Bulthuis Decl.) Ex. 1 at 6 ("In the event of a dispute between an Independent Distributor and Organo Gold . . . the parties shall attempt in good faith to resolve the dispute through nonbinding mediation"). However, the alternative dispute resolution provisions are also further detailed in the Policies and Procedures, which clarify that "[n]othing in this Agreement shall prevent [Organo] from applying to and obtaining from any court having jurisdiction, . . . an injunction, or other relief available to safeguard and protect [its] interest prior to, during, or following the filing of any arbitration or other proceeding." *See* Dkt. # 11 (Zelaya Decl.) Ex. C at 91.

There is little doubt that the instant dispute arises out of the Parties' contractual agreements – and there is little question that the plain language of the agreements permits Organo to seek injunctive relief prior to initiating arbitration proceedings. Organo's request therefore is not subject to the nonbinding mediation condition precedent.

ORDER – 6

L&A Ventura's cited cases do not compel a different result.  In *Delameter v. Anytime Fitness, Inc.*, the parties entered into a franchise agreement which contained a non-compete clause.  *See* 722 F. Supp. 2d 1168, 1171-72 (E.D. Cal. 2010).  The franchise agreements also included a mandatory pre-litigation or arbitration mediation provision, except where *the defendant* believed it necessary to seek equitable relief.  *See id.* at 1172. In contrast to the instant Action, however, it was *the plaintiff* who sued, seeking a declaratory judgment.  *Id.* at 1173.  As a result, the court held that the mediation condition applied.  *See id.* at 1180-81.  That simply is not the case here, where the plain terms of the Policies and Procedures permits Organo to seek injunctive relief aside and apart from the binding alternative dispute resolution provisions.

> ii.    Whether the Non-Compete Clauses Fail for Lack of Consideration

Next, L&A Ventura argues that Organo did not provide independent consideration for the non-compete clauses in the Distributor Application and Policies and Procedures entered into in 2013.  *See* Dkt. # 15 at 10.  The Court disagrees.

In Washington, "[i]f a prospective employee agrees to a noncompete restriction when he or she is first hired, employment by itself may be sufficient consideration." *McKasson v. Johnson*, 315 P.3d 1138, 1141 (Wash. Ct. App. 2013) (citing *Labriola v. Pollard Grp., Inc.*, 100 P.3d 791, 794 (Wash. 2004)).[8]  However, "when an existing at-will employee agrees to a noncompete restriction some time *after* he or she was hired, the restriction is enforceable only if the employer gives the employee *independent consideration* at the time of their agreement."  *Id.*  Such consideration must be something "other than continuing employment."  *Id.* at 1142.

---

[8] The applicability of this principle is an open question.  The contracts at issue do not provide for employment – they merely grant distributors the right to sell Organo products, to enroll others as Organo distributors, and to earn commissions for a fixed term.  *See* Dkt. # 11 (Balthuis Decl.) Ex. 1 at 6.  Nothing in either the Distributor Application or the Policies and Procedures obligates Organo to renew an applicant's distributor status, meaning that each term would be supported by independent consideration.

ORDER – 7

1    The plain terms of the Distributor Application and the Policies and Procedures

2    provides for a one year term subject only to cancellation under the terms of the Policies

3    and Procedures.  *See* Dkt. # 11 (Balthuis Decl.) Ex. 1 at 6 ("The term of this agreement is

4    one year"); Dkt. # 11 (Zelaya Decl.) Ex. C at 74 ("The term of the Distributor Status is

5    one year from the date an Application is accepted by [Organo]").  Moreover, the

6    agreements must be renewed every year (and Organo must accept them).  The Court sees

7    little distinction between this and the week-by-week non-compete clauses explicitly

8    approved in *Labriola*.  *See* 100 P.3d at 794-95 (citing *Racine v. Bender*, 252 P. 115

9    (Wash. 1927)).

10    In short, even if treated as a non-compete clause entered into subsequent to at-will

11    employment, the Distributor Application is likely supported by independent

12    consideration.  "[A] fixed term of employment" serves as adequate independent

13    consideration.  *Id.* at 794 (citing *Schneller v. Hayes*, 28 P.2d 273, 274 (Wash. 1934)).

14    And as discussed above, the agreements expressly provide for a fixed one-year

15    distributorship term, thereby providing sufficient independent consideration.  Even

16    beyond this, pursuant to the Distributor Application, Organo recognized and permitted

17    Mr. Ventura to add L&A Ventura to his distributorship, even if it was not necessarily

18    required to do so.  *See* Dkt. # 11 (Balthuis Decl.) Ex. 1 at 7-8; Dkt. # 11 (Zelaya Decl.)

19    Ex. C at 74.  That also likely serves as independent consideration.  *See Labriola*, 100

20    P.3d at 794 (holding that "independent consideration involves new promises or

21    obligations previously not required of the parties").  The Court finds that the Distributor

22    Application was sufficiently supported by independent consideration.

23                        *iii.    Reasonableness of Non-Compete Clauses*

24    That brings the Court to the question of whether the non-compete clauses at issue

25    are reasonable.  Unsurprisingly, the Parties disagree.

26    "Generally, restrictive covenants in employment contracts are enforceable so long

27    as the restrictions therein are 'not greater than are reasonably necessary to protect the

28    ORDER – 8

business or good will of the employer, even though they restrain the employee of his liberty to engage in a certain occupation or business, and deprive the public of the services, or restrain trade.'" *Seabury & Smith, Inc. v. Payne Fin. Grp., Inc.*, 393 F. Supp. 2d 1057, 1062 (E.D. Wash. 2005) (quoting *Alexander & Alexander v. Wohlman*, 578 P.2d 530, 539 (Wash. Ct. App. 1978)); *Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1205, 1216 (E.D. Wash. 2003) (citing *Perry v. Moran*, 748 P.2d 224, 228-29 (Wash. 1987)). Washington courts have applied a three part test to determine whether a non-compete clause is reasonable: "1) the restraint is necessary for the protection of the business or good will of the employer; 2) the restraint on the employee is greater than is reasonably necessary; and 3) the degree of injury to the public from the loss of the service and skill of the employee is great enough to warrant nonenforcement of the covenant." *Seabury*, 393 F. Supp. 2d at 1062 (citing *Alexander*, 578 P.2d at 539). "If a court finds a restraint unreasonable, it can modify the agreement by enforcing it only 'to the extent reasonably possible to accomplish the contract's purpose.'" *Amazon.com, Inc. v. Powers*, No. C12-1911RAJ, 2012 WL 6726538, at *8 (W.D. Wash. Dec. 27, 2012) (quoting *Emerick v. Cardiac Study Ctr., Inc. ("Emerick I")*, 286 P.3d 689, 692 (Wash. Ct. App. 2012)).

"Washington courts have typically looked favorably on restrictions against working with an employee's former clients or customers." *Id.* In contrast, "Washington courts have been more circumspect when considering restrictions that would prevent an employee from taking on any competitive employment." *Id.* at *9. To justify a general restriction on competition not tied to specific customers, the employer must point "to specific information about the nature of its business and the nature of the employee's work" to justify the restriction. *See id.*

The first issue is whether the non-compete clauses are necessary to protect Organo's business or goodwill. *See Emerick v. Cardiac Study Ctr., Inc., P.S. ("Emerick*

ORDER – 9

*II")*, 357 P.3d 696, 701-02 (Wash. Ct. App. 2015).  The Court finds that the non-compete provisions are necessary.

The non-compete clause in the Policies and Procedures prohibits distributors from "soliciting existing customers of the Company to any ganoderma or healthy beverage business similar to the Company in a multi level marketing setting or its equivalent, for a period of twelve (12) months."  Dkt. # 11 (Zelaya Decl.) Ex. C at 89.  This clause makes sense, as "[a]mong Organo's most valuable assets is its sales organization – the network of Distributors and customers that market and sell Organo's products and services – as well as the contact information and the customer data within the sales organization."  Dkt. # 11 (Perrett Decl.) ¶ 6.  That interest is squarely recognized under Washington law.  *See Pac. Aerospace*, 295 F. Supp. 2d at 1216 (recognizing an employer's "legitimate interest in protecting its customer base from depletion by a former employee").  There is little doubt that this clause is necessary to protect Organo's business.

The non-compete clause in the Distributor Application is somewhat broader, providing that a distributor shall not "participate in any other opportunity that directly competes with Organo Gold in offering ganoderma-based products."  Dkt. # 11 (Bulthuis Decl.) Ex. 1 at 6.[9]  Whether this clause is reasonably necessary is a closer question – it essentially prohibits terminated distributors from joining any business selling ganoderma-based products.  However, in this Court's view, the clause serves to protect Organo's business model – a network of distributors and customers selling Organo's ganoderma-based products would be invaluable to any other such business, even if ganoderma-based products make up only a portion of their overall business.  In fact, this provision serves to

---

[9] L&A Ventura argues that the non-compete clauses conflict and therefore only the narrower clause prohibiting customer solicitation should be enforced.  *See* Dkt. # 15 at 14-16.  The Court disagrees – the two clauses may easily be read in harmony.  The clause in the Policies and Procedures prohibits soliciting only Organo's customers to another MLM setting and only for ganoderma or healthy beverage businesses.  The clause in the Distributor Application, in contrast, prevents distributors from participating in any business directly competing with Organo in selling ganoderma-based products.  That likely encompasses participating in such business where distributors' "downlines" or other network marketing information derived from affiliating with Organo would be invaluable.

ORDER – 10

protect one of the very legitimate business interests L&A Ventura recognized at oral argument: protecting businesses from departing employees unfairly leveraging personal contacts or confidential information acquired during their tenure.  As applied here, Mr. Ventura may very well leverage his intimate knowledge of Organo's distributor policies, procedures, or practices to entice distributors to join TLC.  Whether the identity of those distributors is public or not, Mr. Ventura's insight into their employer's guidelines may unfairly advantage him in recruiting for a competing MLM firm.

Next, the Court considers the scope of the restriction.  *See Emerick II*, 357 P.3d at 703.  Courts typically analyze this prong by considering the geographic and temporal limitations.  *Id.* (citing *Wood v. May*, 438 P.2d 587, 590 (Wash. 1968)).  Although both non-compete clauses here are reasonable as to time – a one year non-compete is relatively short and reasonable (*see Seabury*, 393 F. Supp. 2d at 1063) – they do not contain a geographical limitation.  Organo argues that this is necessary because of the nature of the MLM business.  *See* Dkt. # 10 at 12.  Indeed, Organo distributors are not limited to selling in any particular geographic area.  *See* Dkt. # 11 (Perrett Decl.) ¶ 5.  Washington courts have recognized that an "employer is entitled to a restrictive covenant that is as broad in scope as the business which the covenant seeks to protect."  *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1336 (N.D. Ill. 1990) (citing *Cent. Credit Collection Control Corp. v. Grayson*, 499 P.2d 57, 59 (Wash. Ct. App. 1972)).  And other courts have found nationwide non-compete provisions to be reasonable in the MLM context.  *See e.g., PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1226 (M.D. Fla. 2012) (finding nationwide non-compete provision to be reasonable); *YTB Travel Network of Illinois, Inc. v. McLaughlin*, No. 09-CV-369-JPG, 2009 WL 1609020, at *4 (S.D. Ill. June 9, 2009) (finding that lack of a geographic limitation was irrelevant in network marketing involving online business).

Still, L&A Ventura argues that the Distributor Application's non-compete clause is still unreasonably broad because it prohibits Defendants from engaging in any directly

ORDER – 11

competing opportunity.  Dkt. # 15 at 12-13.  If the clause categorically prohibited distributors from joining any of Organo's potential competitors, then the Court would likely find the clause impermissibly broad.  Indeed, the cases L&A Ventura cites provide some support for the proposition that non-compete provisions prohibiting working for *any* competitor may be unreasonable.  *See Labriola*, 100 P.3d at 800 (Madsen, J., concurring); *Sheppard v. Blackstock Lumber Co., Inc.*, 540 P.2d 1373, 1376 (Wash. 1975) (finding non-compete provision prohibiting "any competitive activity anywhere or anytime, with the determination of what constituted 'competitive activity' to be made by respondent's board of directors" to be unreasonable).  However, the provision here does no such thing – it only prohibits joining a very specific type of competitive venture: those selling competitive ganoderma-based products.  That does not amount to an outright prohibition on Defendants' ability to make a living – rather, it simply prevents them from plying their trade in the ganoderma-based products industry.[10]

L&A Ventura also argues that the Policies and Procedures' restriction on Defendants' solicitation of Organo's existing customers is overly broad because it encompasses both the ganoderma and "healthy beverage" businesses.  *See* Dkt. # 15 at 13.  L&A Ventura also argues that the term "soliciting" is overly broad.  *See id.*  The Court disagrees with both contentions.  First, Courts have routinely held that non-compete clauses are reasonably limited in scope when they apply only to "clients and prospective clients who were solicited or serviced during [an] employee's term of service."  *Seabury*, 393 F. Supp. 2d at 1063.  Second, Washington courts have routinely rejected the same argument that the term "solicit" is ambiguous.  *See id.* at 1062-63 (citing *Racine*, 252 P. at 116).  The term has "a commonsense and ordinarily applied

---

[10] L&A Ventura's contentions that TLC is not a "direct" competitor because of its small offering of ganoderma-based products or marketing stance are misplaced.  Even if TLC only offers a few ganoderma-based products, distributors recruited from Organo inevitably will have substantial experience with selling such products, suggesting a quick increase in sales of those products. Whether TLC and Organo market themselves in different ways is irrelevant – what matters is whether they directly compete in the ganoderma-based product market.

ORDER – 12

1    meaning," particularly in the instant context.  *See id.* at 1063 (citing *Pac. Aerospace*, 295

2    F. Supp. 2d at 1218).

3         Finally, the Court must "balance possible harm to the public by not enforcing the

4    covenant against the employer's right to protect its business."  *Emerick II*, 357 P.3d at

5    705 (citing *Wood*, 438 P.2d at 589).  Neither party seriously argues this point, nor could

6    they do so.  L&A Ventura itself acknowledges that the public would not be deprived of

7    ganoderma-based products if the non-compete provisions were enforced.  *See* Dkt. # 18

8    (Steinberg Decl.) ¶ 4.

9         Given this analysis, the Court finds that the non-compete provisions are reasonable

10   and enforceable.

11                    *iv.    Whether Defendants Have Breached the Contracts*

12        All this brings us to whether Organo has shown that the Defendants have breached

13   the non-compete provisions.  L&A Ventura appears to argue that Defendants have not

14   breached the clauses for three reasons: (1) soliciting distributors is not expressly

15   prohibited by the non-compete provisions, (2) Organo has not presented any evidence

16   that Defendants have solicited Organo's customers, and (3) because TLC is not a "direct

17   competitor" of Organo.  *See* Dkt. # 15 at 15-16.  The Court agrees that Organo has not

18   presented any evidence that Defendants have solicited Organo's customers – they appear

19   to admit as much – but the issue is largely irrelevant.[11]  *See* Dkt. # 20 at 2.

20        Whatever the case, the Court disagrees with L&A Ventura on its other two points.

21   First, the language of the Distributor Application likely prohibits soliciting distributors

22   (though it may certainly have been better drafted).  Defendants are prohibited from

23   "participat[ing] in any other opportunity that directly competes with Organo Gold in

24   offering ganoderma-based products."  Dkt. # 11 (Balthuis Decl.) Ex. 1 at 6.  Clearly

25   soliciting distributors to sell ganoderma-based products – particularly in a similar MLM

26

27   ───────────────
     [11] Perhaps the difficulty here is that Organo relies heavily upon its independent distributors to
     drive its sales.

28   ORDER – 13

setting – would be such an opportunity.  And Organo has presented substantial evidence

supporting that fact.  *See* Dkt. # 11 (Sachtouras Decl.) ¶ 4, Ex. A; Dkt. # 20 (Herrera

Decl.) ¶¶ 3-5, 8, Ex. A; *see also* Dkt. # 11 (Zelaya Decl.) ¶ 11, Ex. A.  Second, the fact

that only a small fraction of TLC's total sales were derived from ganoderma-infused

coffee is immaterial.  The fact is that TLC offers ganoderma-based products for sale in

direct competition to Organo.  *See* Dkt. # 16 (Ventura Decl.) ¶ 22; Dkt. # 17 (Licari

Decl.) ¶ 2.  In fact, as Organo rightly contends, it is reasonable to believe that the

proportion of TLC's sales attributable to ganoderma-based products is likely to increase,

given the influx of distributors more experienced in selling such products.  Defendants'

participation in that "opportunity" constitutes breach.

Accordingly, the Court finds that Organo has shown a likelihood of success on the

merits for its breach of contract claims.

b.  <u>Likelihood of Success on the Merits for Tortious Interference Claims</u>

Next, the Court considers whether Organo has shown likelihood of success on the

merits for its tortious interference claims.

Under Washington law, the elements for tortious interference are: "(1) the

existence of a valid contractual relationship or business expectancy; (2) that defendants

had knowledge of that relationship; (3) an intentional interference inducing or causing a

breach or termination of the relationship or expectancy; (4) that defendants interfered for

an improper purpose or used improper means; and (5) resultant damage."  *T-Mobile USA,

Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1194 (W.D. Wash. 2015)

(quoting *Leingang v. Pierce Cty. Med. Bureau*, 930 P.2d 288, 300 (Wash. 1997)).

For reasons unknown to the Court, L&A Ventura does not respond to this portion

of Organo's brief (though it did address this issue at oral argument).  Whatever the case,

Organo has presented some evidence to support its claim.  Specifically, Organo has

presented evidence that Mr. Ventura actively sought out Organo distributors – individuals

apparently under contract with Organo – to promote a new "opportunity."  *See* Dkt. # 11

ORDER – 14

(Sachtouras Decl.) ¶ 4, Ex. A; Dkt. # 20 (Herrera Decl.) ¶¶ 3-5, 8, Ex. A; *see also* Dkt. # 11 (Zelaya Decl.) ¶ 11, Ex. A.  As a result of this, many of Organo's distributors – including high ranking distributors – apparently have defected to TLC after terminating their relationship with Organo.  *See* Dkt. # 11 (Perrett Decl.) ¶¶ 14-19;[12] Dkt. # 20 (Zelaya Decl.) ¶ 7.  As a result, Organo plainly has suffered substantial damage – by Organo's admission, unless it can stem the tide of defecting distributors, Organo will no longer be a viable as a going concern within a few months.  *See* Dkt. 11 (Perrett Decl.) ¶ 28.

The question, however, is whether Defendants' interference as wrongful.  "Interference is wrongful if it is done for an improper purpose or by improper means." *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 139 (Wash. Ct. App. 2015) (citing *Pleas v. City of Seattle*, 774 P.2d 1158, 1163-64 (Wash. 1989)).  However, "[e]xercising in good faith one's legal interests is not improper interference."  *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1147 (W.D. Wash. 2011) (quoting *Leingang*, 930 P.2d at 300).  In fact, "[t]o be improper, interference must be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession."  *Moore v. Commercial Aircraft Interiors, LLC*, 278 P.3d 197, 200 (Wash. Ct. App. 2012) (citing *Pleas*, 774 P.2d at 1163).

It is not clear what the improper purpose or motive is here – Defendants' apparent purpose in soliciting Organo distributors was simply to seek additional compensation.  *See* Dkt. # 16 (Ventura Decl.) ¶ 15; Dkt. # 20 (Herrera Decl.) ¶ 4.  Organo does not point to any other basis for showing that the alleged interference was wrongful and does not show that Defendants were motivated by an improper purpose, such as malice or ill will.

---

[12] The Court overrules L&A Ventura's objection that there is no basis for this evidence.  *See* Dkt. 15 at 25.  Mr. Perrett is a senior vice president of Organo and could easily verify the number of distributors leaving Organo's organization by accessing its business records.  *See* Dkt. # 11 (Perrett Decl.) ¶¶ 2-3.

ORDER – 15

1    Accordingly, the Court finds that Organo has not shown a likelihood of success on

2    the merits for its tortious interference claim.

3        c.   Whether Organo Will Suffer Irreparable Harm

4        Next, Organo must show that it is "likely to suffer irreparable harm in the absence

5    of preliminary relief." *Winter*, 555 U.S. at 20.  This element is considered the most

6    important prerequisite for the issuance of a preliminary injunction.  *See Dex Media W.,*

7    *Inc. v. City of Seattle*, 790 F. Supp. 2d 1276, 1288 (W.D. Wash. 2011) (quoting *Kotok v.*

8    *Homecomings Fin., LLC*, No. C09–662RSM, 2009 WL 1652151, at *2 (W.D. Wash.

9    June 12, 2009)).  Irreparable injury cannot be established where harm is measurable in

10    damages.  *See id.* (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

11        Beyond its arguments regarding the validity or applicability of the non-compete

12    clauses, L&A Ventura argues that Organo cannot show irreparable harm because it

13    delayed in seeking an injunction, that only a small number of Organo's distributors have

14    actually left, and that Organo has only suffered monetary damages.  *See* Dkt. # 15 at 19-

15    20.  The Court disagrees with these points.

16        To be sure, a long delay before seeking injunctive relief may undermine a party's

17    claim of irreparable harm.  *See Citizens of Ebey's Reserve for Healthy, Safe & Peaceful*

18    *Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083-84 (W.D. Wash. 2015)

19    (quoting *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)).  But

20    the delay here was a mere six weeks, not the severe delay sufficient to deny injunctive

21    relief found in other cases.  *See id.* (sixteen months); *see also Oakland Tribune, Inc. v.*

22    *Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (exclusivity provisions sought

23    to be enjoined had "been in effect for a number of years").  In fact other courts have

24    found longer delays to be permissible.  *See Rodriguez v. Robbins,* 715 F.3d 1127, 1145

25    n.12 (9th Cir. 2013) (roughly three month delay "was not particularly belated"); *see*

26    *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991) (finding that several month

27

28    ORDER – 16

delay was not unreasonable); *Legal Aid Soc. of Hawaii v. Legal Servs. Corp.*, 961 F. Supp. 1402, 1417 (D. Haw. 1997) (nine months held to be permissible).

Moreover, Organo is not faced with only monetary injury. Organo has presented substantial evidence that its very business model relies upon forming robust sales networks of distributors. *See* Dkt. # 11 (Perrett Decl.) ¶¶ 6, 26. Given Organo's heavy reliance on this form of distribution, it seems clear "that the nature of its business makes it vulnerable to losing customers after its relationship" with a distributor ends. *See MetroPCS Pennsylvania, LLC v. Arak*, No. C15-0769JLR, 2015 WL 3893155, at *3 (W.D. Wash. June 24, 2015). Indeed, Washington courts have held that "[i]rreparable harm is a likely consequence of permitting an employee to pursue his former customers in violation of a valid restriction." *Amazon.com*, 2012 WL 6726538 at *12. That logic appears equally applicable to a company's distributors in the MLM sphere. *See Neways Inc. v. Mower,* 543 F. Supp. 2d 1277, 1289 (D. Utah 2008) (holding that irreparable injury was likely where former MLM distributors attempted to recruit plaintiff's current distributors).

Finally, the Court finds that L&A Ventura has not raised any serious doubts about the robustness of Organo's distributor numbers by merely citing various (likely hearsay) statements. *See* Dkt. # 16 (Ventura Decl.) ¶ 21; Dkt. # 18 (Steinberg Decl.) ¶ 5, Ex. 8. Neither Mr. Ventura's "understanding that Organo had over 1,000,000 active distributors worldwide" nor an unverified third party research report shed any light as to Organo's internal difficulties. Organo's business records, on the other hand, suggest serious attrition of both low and high level distributors immediately following February 2016. *See* Dkt. # 11 (Perrett Decl.) ¶¶ 14-19. That stands in stark contrast to the relatively low level of attrition occurring in the six months immediately prior. *Id.* ¶ 21.

The Court is convinced that Organo has shown irreparable harm is likely to occur in the absence of an injunction. Indeed, continued loss of distributors may cripple Organo's viability as a going concern. *Id.* ¶ 28. That concern further justifies a finding

ORDER – 17

of irreparable harm.  *See Southech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006) (citing *Fed. Leasing v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir.1981); *Turnage v. United States,* 639 F.Supp. 228, 232 (E.D.N.C.1986)) ("Generally, it is in cases where a defendant's conduct threatens to cripple or substantially alter a going concern that irreparable harm will be found").

  d. <u>The Balance of the Equities</u>

   Next, the Court finds that the balance of the equities tips in favor of Organo. Organo argues that without an injunction, it will soon lose its viability as a going concern.  *See* Dkt. # 11 (Perrett Decl.) ¶ 28.  L&A Ventura counters by arguing that imposing an injunction will prevent Mr. Ventura from supporting his family and working in his chosen field.  *See* Dkt. # 15 at 23.

   The requested restrictions here do not seriously impinge upon Mr. Ventura's chosen field.  For one, they are narrowly tailored as they only prevent Defendants from soliciting Organo's distributors and customers and preventing him from participating in opportunities that involve the sale of ganoderma-based products.  Indeed, Defendants are still permitted to work *in the MLM space* so long as the opportunity does not involve ganoderma-based products.  *See* Dkt. # 11 (Balthuis Decl.) Ex. 1 at 6.  In fact, Mr. Ventura admits that he has had substantial success throughout the MLM industry, not just in selling ganoderma-based products.  *See* Dkt. # 16 (Ventura Decl.) ¶ 2.  He has participated in companies selling "a wide range of products" including "gasoline additives to nutritional products to hygiene products."  *Id.*  Indeed, Mr. Ventura has apparently had substantial success selling non-ganoderma products in his current position at TLC – although he has only sold $45.62 worth of products at TLC (*id.* ¶ 23), he has generated over $44,000 in income (*see* Dkt. # 2 (Ventura Decl.) ¶ 7).  Moreover, the requested injunction is for a relatively short period of time – just one year.  In short, Mr. Ventura likely could successfully ply his trade in the MLM industry regardless of whether he associates with a company selling ganoderma-based products or not.

ORDER – 18

e.   Whether an Injunction is in the Public Interest

Finally, the Court addresses whether the requested injunction serves the public interest.  *Winter*, 555 U.S. at 20.  Organo argues simply that "the public interest benefits from the enforcement of business contracts, including reasonably necessary non-compete and non-solicitation agreements."  *See MetroPCS*, 2015 WL 3893155 at *3 (citing *MWI Veterinary Supply Co. v. Wotton*, 896 F. Supp. 2d 905, 914 (D. Idaho 2012); *Perry*, 748 P.2d at 229).  L&A Ventura, on the other hand, argues that the public interest is best served by unrestrained competition and to preserve the public's access to services.  *See* Dkt. # 15 at 23.  It argues, essentially, that enjoining Defendants would deprive the public of options and services.  *See id.*

The Court finds that an injunction is plainly in the public interest here – the public interest being the enforcement of reasonable and necessary non-compete agreements. The non-compete clauses at issue here are aimed solely at preserving Organo's goodwill and customers in the ganoderma-based product (and healthy beverage) industry.  Those concerns are legitimate and serve the public interest.

In contrast, Defendants' proffered public interest arguments are easily undermined by the fact that the public may still easily purchase ganoderma-based products with or without his involvement in the industry.  *See* Dkt. # 18 (Steinberg Decl.) ¶ 4 (internet research showed that at least nine additional companies manufacture ganoderma-infused coffee and tea and ten MLM companies are involved in the healthy coffee industry, including five that sell ganoderma-infused coffee).  Moreover, L&A Ventura does not argue that the public would be deprived of the option of choosing TLC – either to serve as distributors or as customers.  They would not.

Accordingly, the Court finds that an injunction would be in the public interest.

f.   Whether Organo Must Post a Bond

Having determined that Organo is entitled to a TRO, the Court must determine whether Organo must post a bond.  *See* Fed. R. Civ. P. 65(c) ("The court may issue a

ORDER – 19

preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). The Court has substantial discretion to determine the amount of the security, if any, required. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)).

Organo argues that no security is required. *See* Dkt. # 10 at 15. L&A Ventura contends that any security should be significant – in the realm of $1,000,000.

The Court believes that Organo should be required to post security in this case because the Court has some doubts as to its substantive merits. First, Organo has not conclusively established likelihood of success on the merits with respect to its tortious interference claim. Second, the terms of the non-compete clauses are imprecise as to whether solicitation of distributors is permissible or not. Although this Court has concluded that such solicitation (at least to directly competing associations offering ganoderma-based products) is improper, that is not a foregone conclusion. Finally, there are questions as to whether social media posts visible to the public may serve as impermissible solicitations. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 924 F. Supp. 2d 1281, 1291-94 (E.D. Okla. 2013) (collecting cases and finding that Facebook posts were not solicitation). Organo has presented evidence that at least some of its distributors were directly solicited, justifying the injunction. *See e.g.*, Dkt. # 20 (Herrera Decl.) ¶¶ 3-5, 8. But whether Defendants may continue to wax poetic about their current MLM opportunity (as long as it does not involve ganoderma-based products) is a more open question. Additionally, the Court believes Defendants may suffer financial harm as a result of the injunction, even if it is of short duration. *See* Dkt. # 2 (Ventura Decl.) ¶ 6 (outlining income from MLM activities in the past few years). Indeed, Mr. Ventura attests that he would suffer "losses far in excess of $75,000" if he was not able to work for a year. *Id.* ¶ 8.

ORDER – 20

In light of the above, the Court believes that Organo should be required to post a bond in the amount of $100,000.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Organo's Motion.  Dkt. # 10. Accordingly, the Court will enter a TRO as more fully set forth below.

## VI.   TEMPORARY RESTRAINING ORDER

Effective upon posting $100,000 bond or equivalent security with this Court, and upon service of this Order, Defendants L&A Ventura Management, Inc. and Luis Ventura[13] are hereby enjoined from taking the following actions:

1. Violating the express terms of the Distributor Application with Organo and Organo's Policies and Procedures, including by competing with Organo by participating in an opportunity that directly competes with Organo by offering ganoderma-based products or by soliciting Organo's existing customers to any ganoderma or healthy beverage MLM business;

2. Soliciting, recruiting, or raiding Organo's distributors or customers;

3. The temporary restraining order will become effective upon formal service of this Order and will remain in effect pending further order of this Court;

4. Defendants L&A Ventura Management, Inc. and Luis Ventura are **ORDERED to show cause** on or before **May 12, 2016** why the Court should not convert this temporary restraining order into a preliminary injunction.

DATED this 3rd day of May, 2016.

The Honorable Richard A. Jones
United States District Court

---

[13] As noted, *supra*, Organo has not satisfactorily shown that Mrs. Ventura has adequately been served, given her divorce from Mr. Ventura.  *See* Dkt. # 2 (Ventura Decl.) ¶ 3.  Accordingly, the Court will not impose an injunction on her without notice until she has been served and provided an adequate opportunity to respond.

ORDER – 21